**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 21 CR 536 |
| | ) | Hon. Judge Ana C. Reyes |
| MS. AGNIESZKA CHWIESIUK, | ) | |
| | ) | |
| Defendant. | ) | |

## MS. AGNIESZKA CHWIESIUK'S SENTENCING MEMORANDUM

Now comes the Defendant, **Ms. Agnieszka Chwiesiuk**, by her attorney, the Law Office of Nishay K. Sanaa through Mr. Nishay K. Sanan and Ms. Cece White, and respectfully submits to this Honorable Court her Sentencing Memorandum pursuant to Federal Rule of Criminal Procedure 32(c), *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, as well as the factors enumerated in 18 U.S.C. § 3553(a).

Ms. Chwiesiuk respectfully requests that this Court set her offense level at 8 with a criminal history category I, and impose a sentence of mandatory supervised release (MSR) and community service. In support thereof, Ms. Chwiesiuk states as follows:

## I.      BACKGROUND

Ms. Agnieszka Chwiesiuk and her brother, Karol Chwiesiuk, were charged in connection to the events occurring at the United States Capitol on January 6, 2021. Both defendants were changed with entering and remaining in a restricted building in violation of 18 U.S.C.§ 1752(a)(1) (County One); disorderly or disruptive conduct in a restricted building in violation of 18 U.S.C. § 1752(a)(2) (Count Two); disorderly conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and parading, demonstrating, or picketing in a Capitol

Building in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). Dkt. 54. Karol Chwiesiuk was

further charged with entering or remaining in a room designated for the use of a member of

Congress in violation of 40 U.S.C. § 5104(e)(2)(C)(i) (Count Three). *Id*.

The case proceeded to jury trial on August 7, 2023. Although Karol Chwiesiuk testified

in his own defense, Agnieszka Chwiesiuk did not. On August 10, 2023, the jury began

deliberating and returned a verdict the following day. The jury reached a verdict of guilty of

Counts 1, 2, 4, and 5 as to defendants Agnieszka and Karol Chwiesiuk, but found Karol

Chwiesiuk not guilty of Count Three.

Ms. Chwiesiuk has been under conditions of pretrial release since her arrest on December

19, 2022 in Chicago, Illinois. She remains on pretrial release at the time of sentencing, and has

had no reported violations of those conditions.

## II.    SENTENCING MEMORANDUM

Post *Booker*, a district court has significantly more freedom to fashion a sentence which

is appropriate for the individual defendant before the court. Although a district court must "begin

all sentencing proceedings by correctly calculating the applicable Guidelines range," those

Guidelines are only advisory. *See United States v. Turner*, 21 F.4th 862, 864 (D.C. Cir. 2022),

citing *Booker*, 543 U.S. 220, 245. Sentencing courts are required to consider the applicable

Guidelines as well as all the factors listed in 18 U.S.C. § 3553(a) when imposing a sentence.

*Turner*, 21 F.4th at 864; 18 U.S.C. § 3553(a). Where the defense raises § 3553(a) factors in

requesting a below guidelines sentence, the court must conduct a meaningful analysis of how

those factors apply to the facts and explain why its sentence is appropriate under § 3553(a).

Pursuant to 18 U.S.C. § 3582, when this Court considers the imposition of a term of

imprisonment and the length thereof, it must also recognize that "imprisonment is not an

appropriate means of promoting correction and rehabilitation." *Id*. The primary directive in §

3553(a) is that the court must impose a sentence that is "sufficient but not greater than

necessary" to achieve the goals of sentencing. When determining the appropriate sentence, "no

limitation shall be placed on the information concerning the background, character, and conduct

of [the defendant] which a court of the United States may receive and consider for the purpose of

imposing an appropriate sentence." 18 U.S.C. § 3661.

Our jurisprudence makes clear that one of the main goals of utilizing sentencing factors is

to consider each defendant appearing before the court as an individual. As the Supreme Court

explained in *Koon v. United States*, 518 U.S. 81, 113 (1996), "[i]t has been uniform and constant

in the federal judicial tradition for the sentencing judge to consider every convicted person as an

individual and every case as a unique study in the human failings that sometimes mitigate,

sometimes magnify the crime and punishment to ensue." The basis of this tradition is the notion

that the "punishment should fit the offender and not merely the crime." *Williams v. New York*,

337 U.S. 241, 247 (1949); *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)

("for the determination of sentences, justice generally requires consideration of more than the

particular acts by which the crime was committed and that there be taken into account the

circumstances of the offense together with the character and propensities of the offender,"). With

those considerations in mind, Ms. Chwiesiuk urges this Court to look not only at the offense

conduct and its context, but also at her unique circumstances when crafting an appropriate

sentence.

### a. The Nature and Circumstances of the Offense

Despite the counts of conviction being misdemeanors the conduct underlying the charges could not be more serious, but the nature of the offense is a polarizing one. The vast majority of Americans see the events of January 6, 2021 as a riot, an insurrection, the likes of which have never been seen in our country. The small minority who participated in January 6, 2021 viewed it as a protest, or for the more active participants, a fight to protect this country. While most people see through the narrative of the latter view, many of those who participated in January 6th simply do not believe they did anything wrong. Clearly there is a larger, more systemic issue at play here – one being sold by certain media outlets, echo-chambers on social media, and online forums. Despite that, this Court's job is to evaluate the conduct of one person: Agnieszka Chwiesiuk.

In doing so, this Court should note that Ms. Chwiesiuk and her brother went to the Capitol grounds much later than many other defendants in similar cases. According to the Capitol Police Captain who testified at the joint trial, protesters and rioters broke through the Senate Wing Door and nearby window at 2:12 p.m. Tr. Trans., p. 113. According to the government, the Chwiesiuks did not enter the Senate Wing Door until 2:57 p.m., and remained inside for only nine minutes. Dkt. 130, pp. 12, 14. While on their way to the Capitol and while inside of it, the Chwiesiuks did not injure or attempt to injure anyone, nor did they engage in boisterous rhetoric which might encourage other protestors. What the Chwiesiuks participated in was far more serious than their individual conduct in terms of consequences for our nation.

### b. The History and Characteristics of Ms. Chwiesiuk

Unlike many defendants appearing in federal courts for sentencing, Ms. Chwiesiuk had a seemingly uneventful upbringing, devoid of abuse or need. Ms. Chwiesiuk was raised by two,

loving parents who have been married for at least thirty-two years. Her parents both maintained

employment and raised Chwiesiuk in a neighborhood of Chicago, Illinois. Ms. Chwiesiuk is

college-educated and generally has been able to obtain and keep jobs. Nothing about Ms.

Chwiesiuk's history or characteristics explain her conduct in this case, likely, because her actions

were ideological, not based on need or greed as in so many other cases.

### c. The Kinds of Sentences Available and the Sentencing Range Calculated under the Sentencing Guidelines

The jury convicted Ms. Chwiesiuk of Counts 1, 2, 4, and 5. For purposes of identifying

the appropriate Guideline range in this case, Counts One and Two are grouped pursuant to USSG

§ 3D1.2(b), while the USSG do not apply to Counts Four or Five because they are Class B or C

misdemeanors. *See* PSR, p. 10; USSG § 1B1.9.

Based on her convictions for Counts One and Two, Ms. Chwiesiuk faces a maximum

statutory penalty of one year imprisonment pursuant to 18 U.S.C. §§ 1752(a)(1) and (2). For

Counts Four and Five, Ms. Chwiesiuk faces a maximum sentence of imprisonment of six

months. PSR, p. 16; 40 U.S.C. §§ 5104(e)(2)(C)(i) and (e)(2)(D). The Guidelines suggest a range

of imprisonment from zero to six months for Counts One and Two. PSR, p. 16. Because the most

serious offenses are in Zone A of the Sentencing Table, the Guidelines do not require a term of

imprisonment. USSG § 5C1.1(f). The Guidelines allow for the sentences to run concurrently if

the sentence imposed on Count One or Two is adequate to achieve the total punishment. PSR, p.

16; *citing* USSG § 5G1.2(c).

Pursuant to 18 U.S.C. §§ 3561(c)(2) and 3564(b), Ms. Chwiesiuk is eligible for a term of

probation of up to five years, with multiple terms of probation running concurrently. PSR, p. 16.

Pursuant to the Guidelines for Counts One and Two, community confinement, home detention,

or intermittent confinement may be imposed. USSG § 5B1.1, comment n.1(a).

The statutory provisions allow for a term of MSR of not more than one year (18 U.S.C. § 3583(b)(3)) for Counts One and Two, while the Guidelines suggest that a term of MSR of one year is appropriate. USSG § 5D1.2(a)(3). In addition, the PSR lists numerous conditions of MSR, and Ms. Chwiesiuk offers no objections to those conditions.

The government seeks $500 in restitution, and Probation notes that. Probation also explains the various maximum fines and special assessments, along with the relevant Guideline provisions. Ms. Chwiesiuk requests that if restitution is ordered, a separate fine not be assessed.

### d.  The Need for the Sentence Imposed to Reflect the Goals of Sentencing

For the reasons explained below, a Guidelines sentence of imprisonment will not accurately reflect the goals of sentencing. A lengthy sentence of MSR or probation, however, should achieve those goals.

#### i.  The need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

The Chwiesiuks did not travel from Chicago to Washington D.C. because they wanted to break the law. They traveled to the Capitol to see Donald Trump speak and hear what he had to say about what they believe to be a stolen election. As demonstrated by the government's exhibit to its sentencing submission, Ms. Chwiesiuk believes that her prosecution is politically motivated. Dkt. 130-1. Whether this Court sentences Ms. Chwiesiuk to a term of imprisonment or simply MSR, it is unlikely she will change her political outlook and beliefs related to her prosecution. Given that, Ms. Chwiesiuk requests some leniency in light of the exceptionally low Guidelines range in this matter.

#### ii.  The need to afford adequate deterrence to criminal conduct

Deterrence is a factor to be considered in relation to the public at large as well as a factor to consider specific to Ms. Chwiesiuk. A sentence of MSR or probation is more than

adequate to provide a deterrent effect to the general public, in large part because of the unprecedented investigation by the federal government and far-reaching prosecution by the Department of Justice. The amount of resources dedicated to tracking down the individuals present at the Capitol and then prosecuting them for various crimes has not gone unnoticed by the American public. The more defendants who are sentenced, even to relatively small sentences, the more the American public sees that the events of January 6 cannot happen again, and if they do, offenders will be held accountable.

A sentence of MSR or probation will accomplish the goals of general and specific deterrence to prevent both Ms. Chwiesiuk and anyone else from ever following in the footsteps of January 6th defendants.

### iii.   The need to protect the public from further crimes of the defendant

Besides the case at bar, Ms. Chwiesiuk has no other incidents of criminality. The acts which led to her conviction were aberrant behavior for Ms. Chwiesiuk.  This Court should have no doubt that it will ever see Ms. Chwiesiuk come before it again for any criminal purpose.

### e.  Similarly Situated Defendants

In fashioning an appropriate sentence, this Court is also required to consider the need to avoid "unwarranted sentencing disparities" among defendants who have been found guilty of similar conduct. In Ms. Chwiesiuk's case, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses an offenders similarly." *United States v. Alford*, 2024 U.S.App. LEXIS 318, \*20 (D.C. Cir. 2024), *quoting United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023). Here, Ms. Chwiesiuk's Guideline range is zero to six month's incarceration, and she respectfully urges this Court to sentence her to a term of

MSR, in keeping with the low end of the Guidelines. Such a sentence would also keep her in line with other, similarly situated defendants.

The government urges the Court to sentence Ms. Chwiesiuk above the Guideline range to a term of 12-months' incarceration. According to recent data, in the majority of the 700 sentencings to date, courts have issued punishments under the Guideline range and less than that requested by the government.[1] Of those sentenced in January 6-related cases as of January 5, 2024, the courts have meted out below-guidelines sentences in 67 percent of the cases. *Id*. Specific to the 482 misdemeanants sentenced as of January 2, 2024, the court issued below-guidelines sentences in 81 percent of those cases. *Id*.

In its sentencing submission the government suggests cases which it argues involve similarly situated defendants. Ms. Chwiesiuk compares and distinguishes one of the cases provided by the government, and offers an additional three cases (all co-defendants) for comparison. For ease of reference, Ms. Chwiesiuk has provided the chart below to compare certain aspects of the cases at issue, with discussion to follow.

|  | Charges | Government Recommended Sentence | Plea or Trial | Actual Sentence Imposed |
|---|---|---|---|---|
| Micah Coomer; 23-CR-124 | 40 U.S.C. § 5140(e)(2)(G) | 30 days' incarceration and restitution | Plea | 48 months' MSR; 279 hours community service; $500 restitution |
| Dodge Dale Hellonen; 23-CR-144 | 40 U.S.C. § 5140(e)(2)(G) | 21 days' incarceration and restitution | Plea | 48 months' probation; 279 hours community service; $ |

---

[1] *See* Tom Jackman and Spencer Hsu, *Most Jan. 6 defendants get time behind bars, but less than the U.S. seeks*, The Washington Post, January 5, 2024, available at https://www.washingtonpost.com/dc-md-va/2024/01/05/january-6-riot-sentences/ (last accessed Jan. 15, 2024).

| Joshua Abate; 23-CR-144 | 40 U.S.C. § 5140(e)(2)(G) | 21 days' incarceration and restitution | Plea | 12 months' probation; 279 hours community service; $500 restitution |
|---|---|---|---|---|
| Stacy Wade Hager; 21-CR-381 | 18 U.S.C. §§ 1752(a)(1) and (a)(2); 40 U.S.C. §§ 5104(e)(2)(D) and (G) | 12 months' incarceration and restitution | Bench Trial | 7 months; incarceration; $500 restitution |

Beyond the simple facts of the recommendations made by the government for the above-listed defendants and the resulting sentences, the government's justifications for those recommendations are significant. These recommendations by the government demonstrate significantly more egregious behavior by defendant Hager and co-defendants Abate, Coomer, and Hellonen.

In the case of defendant Hager, the government recommended a 12 month term of incarceration because Hager: "(1) anticipated violence on January 6, and packed his bags as to prepare for hand-to-hand fighting; (2) came to Washington, D.C. fixated on the idea that only his preferred presidential candidate, Donald Trump, could take office; (3) was in a position to observe the violence on January 6, and yet taunted police as he made his way deeper into the Capitol to disrupt the Congressional proceedings; (4) continues to espouse conspiracy theories that January 6 was a hoax and that police invited rioters into the Capitol – despite what he saw firsthand; and (5) has expressed no remorse for his actions on January 6, and instead romanticizes the violent actions of rioters." *See* 21-CR-381, Dkt. 58, p. 2. According to the government, Mr. Hager entered the Capitol at 2:34 p.m. and remained inside for approximately 13 minutes. However, prior to entering Mr. Hager was present at the Capitol for some time engaging in riotous behavior. Even with all of this, the government recommended a sentence

within the Guideline range of 6-12 months. By comparison, codefendants Abate, Coomer, and

Hellonen demonstrated even more problematic behaviors and actions.

The codefendants were all active duty Marines who entered the Capitol at 2:20 p.m.,

only seven minutes after the initial breach. They remained inside for 52 minutes, exiting at 3:12

p.m. Despite being nearly first on scene and staying far longer than Mr. Hager or the

Chwiesiuks, the government recommended light sentences for each codefendant. The basis for

the government's recommendation details the worst behavior of anyone discussed herein,

noting that Coomer, Abate, and Hellonen: "(1) were active-duty United States Marines when

they unlawfully breached the United States Capitol on January 6; (2) entered the Capitol at the

Senate Wing Door, the initial breach point on January 6, minutes after that door was initially

breached, amid signs of the violent breach that were still fresh and obvious, (3) remained inside

the Capitol for a long time, approximately 52 minutes; (4) joined with other rioters in

provocative chants which further riled up the mob and was a rallying cry to continue the riot;

(5) were inside the rotunda when other rioters engaged in aggressive physical skirmishes with

police; and (6) although admitting their unlawful conduct on January 6, have yet to genuinely

express sincere remorse for that conduct." *See* 23-CR-144, Dkt. 44, p. 2. Despite all the above

conduct, the government recommended extremely lenient sentences for these codefendants,

regardless of the fact they did not express sincere remorse.

Lastly, the government recommends sentences of 12 and 8 months' incarceration for

Mr. Chwiesiuk and Ms. Chwiesiuk, respectively. These recommended sentences are above the

Guideline range which Probation suggests and the undersigned supports. More to the heart of

the issue, however, is that the government makes these recommendations despite the

comparatively innocuous behavior of the Chwiesiuks.

As the basis for its sentencing recommendation, the government argues that the Chwiesiuks: "(1) entered the Capitol at the Senate Wing Door, the initial breach point on January 6, and they did so notwithstanding the signs of the violent breach, including broken windows and a blaring, audible alarm; and (2) neither has accepted responsibility nor expressed remorse for their conduct on January 6." *See* 21-CR-536, Dkt. 130, p.2. The Chwiesiuks did not arrive until 2:57 p.m. and only remained inside for approximately nine minutes. While this conduct is still illegal, it is significantly less serious than the conduct of Mr. Hager, or codefendants Coomer, Abate, and Hellonen.

In light of the cases cited above as well as all of the other comparative cases offered by the government, sentences of MSR or probation are appropriate for both Chwiesiuks.

### III.     CONCLUSION

Despite the context of this case, this Court should look at the individual before the court and determine what sentence best fits her to achieve the goals of sentencing. Here, Ms. Chwiesiuk submits that a sentence at the low end of the guidelines – MSR or probation - will satisfy the goals of sentencing while allowing her to begin rebuilding her life.

Respectfully submitted this 17th day of January, 2023.

/s/  Nishay K. Sanan
Mr. Nishay K. Sanan
nsanan@aol.com


/s/  Cece White
Ms. Cece White
cece@sananlaw.com


Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1242
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111